IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE. MARY HARPER, | ) | Bankruptcy Case No.: |
| | ) | 19-81280-CRJ7 |
| Debtor, | ) | |
| | ) | |
| MARY HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: |
| | ) | 21-80011-CRJ |
| SCOTTSBORO OB-GYN SPECIALISTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN OPPOSITION TO PLAINTIFF'S CLAIM FOR RELIEF AND DEFENSES

### INTRODUCTION

Scottsboro OB-GYN Specialists, LLC, (hereinafter "Scottsboro OB-GYN"), is a professional limited liability company that provides obstetrical and gynecological services to its many patients in Scottsboro, Alabama and the greater Jackson County, Alabama area.

Melissa Campbell is the office manager for Scottsboro OB/GYN and has worked in that position for approximately 25 years. OB/GYN does not have a chief financial officer (CFO), but many of Ms. Campbell's job duties involve the same type of job functions that a CFO might perform. She has access to and supervision over all patient accounts and is responsible for billing. All court-related documents, such as subpoenas and court notices (including bankruptcy matters) that are received by OB/GYN are given or delivered to her for processing or handling.

## THE FACTS

The Plaintiff, Mary Harper, (herein "Harper") was seen as a patient at OB/GYN on October 29, 2019 and November 14, 2019. Ms. Harper's total amount for services was $430.00. As a Medicare recipient, Medicare paid a portion of the statements, and after certain charge-offs, the outstanding balance was reduced to $99.91. See Campbell Affidavit at p. 1-2.

From January 10, 2020 to January 20, 2021, Ms. Harper was mailed six separate statements for the unpaid balance of her accounts. Those six billing dates were January 10, 2020, February 28, 2020, May 4, 2020, July 31, 2020, December 4, 2020, and January 20, 2021. Bills would have been mailed to her based on a printout of patient accounts with outstanding balances, the total number of which typically ranged from 750 to 800. Ms. Harper never made a payment on the outstanding balance and never made any inquiries about the unpaid balance. See Campbell Affidavit at p. 2.

OB/GYN's first knowledge that Mary Harper had filed any form or chapter of bankruptcy was on Monday, February 8, 2021 when OB/GYN received a Summons and Complaint in the above-styled adversary proceeding. See Campbell Affidavit at p. 2.

## THE LAW

This Court has subject matter jurisdiction over this matter pursuant to *28 U.S.C. § 1334(b)*. This is a core proceeding. *28 U.S.C. § 157(b)(2)(A)*.

OB/GYN readily acknowledges that the automatic stay provision of *§ 362(a)* is a fundamental protection afforded to debtors by the Bankruptcy Code. More specifically, *11 U.S.C. §362(a)(6)* provides that:

> "(a)Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;"

See, *Lodge. v. KONDAUR CAPITAL CORPORATION, McCalla Raymer, LLC/McCalla Raymer, Esq.*, 750 F. 3d 1263 (11th Cir. 2014).

**The alleged violation of the automatic stay by OB/GYN, if any, was not willful.**

*Section 362(k)(1)* of the Bankruptcy Code requires that an award for damages is only proper upon proof of a <u>willful violation</u> of the stay. In this case, OB/GYN had no actual knowledge of the filing or pendency of Harper's Chapter 7 bankruptcy. See Campbell Affidavit at p. 2.

**To recover damages for violation of the automatic stay, the debtor bears the burden of establishing both that the violation occurred and that the violation was willful.**

Violations of the automatic stay are "willful" if the violator (1) knew of the stay and (2) intentionally committed the act that lead to the violation of the stay, "regardless of whether the violator specifically intended to violate the stay." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996); *In re Spinner*, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008). If a stay violation is inadvertent, contempt is not an appropriate remedy. See, *In re Collum, v. East Alabama Medical Center and The East Alabama Health Care Authority d/b/a East Alabama Medical Center*, 604 B.R. 61 (M.D. Alabama 2019).

**Harper was not injured, including emotional distress, and suffered no <u>actual</u> damages as a direct result of such alleged violation.**

3

Harper also claims damages for emotion distress. In order to recover such damages, a plaintiff must (1) suffer significant emotional distress (2) clearly establish emotional distress, and demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay. *Lodge, Ibid. at 1271*.  The single "act" on which Harper bases her claim that OB/GYN violated the automatic was receiving a computer-generated billing statement showing an unpaid balance of $99.91.

**Even if Harper could prove she somehow was injured and suffered actual damages, Harper is not entitled to an award of attorney's fees.**

*Collum* cited above is instructive on this point as the conduct of the attorney in *Collum* is virtually identical to the actions of Harper's attorney in this case:

> In this matter, EAMC offset $328.00 from Debtor's state tax return. Rather than reaching out to EAMC or its counsel, Debtor's attorney instantly filed this action for contempt. This matter did not involve a series of continued setoffs or garnishments; it was a one-time withholding. It is not beyond the realm of reason to assume that a simple phone call, email, or general correspondence may have easily resolved the violation. Instead, Debtor's counsel immediately escalated the matter and made a proverbial mountain out of a molehill. While *§ 362(k)* mandates the award of attorney's fees, this Court will exercise its right to limit and modify such  fees based on their reasonableness and necessity. As a result of Debtor's counsel's failure to attempt to resolve a minor and routine violation, a large portion of the attorney's fees from prosecuting this case are unnecessary and therefore unreasonable. Accordingly, this Court will limit those fees to $150.00. As EAMC has returned the funds set off against Debtor's tax refund, with interest, there are no additional damages for the Court to address. *See In re Palumbo Family Ltd. P'ship*, 182 B.R. 447, 471 (Bankr. E.D. Va. 1995) (denying request for damages where defendant returned funds it had taken in violation of the automatic stay to debtor with interest).

*Id*. at 70-71

Neither Harper nor her attorney make any attempt to resolve this matter short of filing a formal adversary proceeding, when a simple phone call would have in fact resolved the matter.

4

See Campbell Affidavit at p. 2-3. See also, *In re Hutchins*, 348 B.R. 847 (2006), wherein Judge Cohen writing for the Northern District of Alabama, Southern Division, held that:

> Like most courts, this Court abhors stay violations. But, while stay violations may be inherently wrong, they are not inherently harmful. Yes, Ocwen violated the stay, but there is no evidence that Mr. Hutchings was injured by that violation. The vast majority of reported cases on the issue of whether a debtor who was not injured by a stay violation may recover against the violator hold that the debtor may not recover. This Court agrees. Therefore, without an injury caused by the violation, Mr. Hutchings is not entitled to any recovery.

*Id.* at 852-853.  Judge Cohen also found that:

> Mr. Hutchings is not entitled to an award of actual damages, including costs and attorneys fees, because he failed to mitigate his damages. As explained above, the only damages Mr. Hutchings claims relate to his prosecution of the pending action against Ocwen. There is no evidence that he had any damages before he filed this complaint. And as mentioned above, because Ocwen's conduct had ceased, it was not necessary for Mr. Hutchings to take any action to stop that behavior. In contrast, under the law of mitigating damages, Mr. Hutchings had the responsibility to avoid the damages he incurred by not filing his action.

*Id.* at 853-854.

## CONCLUSION

The Plaintiff is not entitled to and should not be awarded damages of any kind or any other form of relief based on the undisputed facts and the applicable law.

Respectfully submitted.

/s/Gerald R. Paulk
Gerald R. Paulk
Attorney for Defendant,
Scottsboro OB-GYN Specialists, LLC

Of Counsel:
**PAULK LAW FIRM, P.C.**
231 S. Market Street
P.O. Box 399
Scottsboro, Alabama 35768
PH: (256) 574-6060
gpaulk@scottsboro.org

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **BRIEF IN OPPOSITION TO PLAINTIFF'S CLAIM FOR RELIEF AND DEFENSES** has been served via electronic delivery through CM/ECF electronic filing system on this 5th day of April, 2021, upon the following:

> **John C. Larsen, Esq.**
> **LARSEN LAW P.C.**
> **1733 Winchester Road**
> **Huntsville, AL 35811**
> **john@jlarsenlaw.com**
> **Attorney for Plaintiff**

/s/Gerald R. Paulk
Gerald R. Paulk

6